Commonwealth *v.* Talley, Appellant.

Argued November 15, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*George G. Lindsay,* with him *Stanley J. Burke,* for appellant.

*Richard B. Russell,* District Attorney, with him *Cyrus Palmer Dolbin,* Assistant District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 23, 1974:

Appellant, Maurice M. Talley, was tried by a judge and jury and found guilty of murder in the first degree. Post-trial motions were denied and appellant was sentenced to life imprisonment. This appeal followed.

The facts surrounding this appeal are as follows: On January 19, 1968, the body of one Miss Patricia Sholley was discovered in Schuylkill County, along Route 895, by officers of the Pennsylvania State Police. The decedent had been missing since December 26, 1967, when she was last seen leaving the Reading Hospital, where she had been employed as a practical nurse. An investigation revealed that a man fitting the description of appellant had been employed at the same hospital and was seen the night the decedent disappeared. A search of appellant's residence, pursuant to a warrant, produced a bloodstained suit owned by appellant and a flashlight and nursing equipment that were identified as belonging to the decedent. Later two persons, who had been involved in an automobile accident with appellant on the night the decedent disappeared, notified police of this accident and gave the police the license number of the automobile appellant was driving. This number matched that of the decedent's automobile. Moreover, after the decedent's car was recovered, the police found fingerprints on the automobile that matched appellant's. Appellant was arrested, tried and convicted of murder in the first degree.[1]

Appellant first alleges that the trial court erred in not granting a defense motion for a mistrial due to alleged prejudicial remarks made by the district attorney in his closing argument. The district attorney, in closing to the jury, after a discussion of all of the evidence against appellant, discussed the evidence that appellant

---

[1] Appellant does not question the sufficiency of the Commonwealth's evidence.

had given false information at the automobile accident which occurred shortly after the murder, stating: ". . . What is the importance of this accident? Well, it is two or three-fold really. One, the condition of his clothes between the time Farmer Ney and the people in the hospital saw him and now, all whitish substances on him. He is disheveled. He has his fly open. Ladies and gentlemen of the Jury, certainly when your fly is busted, isn't it natural for a man's shirt tail to stick out. Of course, the Zerbys particularly described this white substance on his coat and on his pants; and, of course, Mrs. Zerby, being a very efficient co-pilot as it were, she got the license number. She insisted he write his name and address down; but what did he write down? Did he write, James McCoy, because that was one of the names he used? No. Did he write, Maurice Talley? No. He wrote, James Roberson. Did he write his address down? No. He wrote 412 Church Street. Now, he used the same Street, but he got across the street, and there is no such address as was testified to. Did he write his telephone number down? Did he write his own telephone number down or the telephone number of [the decedent]? No, of course not. He wrote down the telephone of that poor little old lady who came in here. That's whose telephone number he wrote down. He just made it up right then and there. Why is this important? This man has just committed murder. He didn't want to be identified. That little scratch on the Zerbys car wasn't concerning him." If this statement was made before a review of the evidence against appellant, it may well have been error not to grant a mistrial. However, in *Commonwealth v. Wilcox,* 316 Pa. 129, 173 A. 653 (1934), we stated: "Complaint is made that the Commonwealth's officer said the defendant was guilty of the offenses charged against him. . . . The Commonwealth's attorney may always argue to the jury that the evidence establishes the guilt of the de-

fendant, and that certain facts in evidence are conclusive of such guilt." At page 139.

The district attorney did no more here than was allowed by *Wilcox*. He merely argued that appellant conducted himself in a surreptitious manner at the scene of an automobile accident because he had committed a murder. This was a reasonable inference based on the testimony that was given by the persons who were involved in the automobile accident with appellant. Moreover, the trial judge adequately protected against any possible prejudice that appellant could suffer as a result of the statement. He instructed the jurors as follows: "If you believe that any of the utterances they have made in their closing arguments express such an opinion, you will disregard such an opinion in considering the testimony in arriving at your verdict in this case. You are not bound by any opinion. . . ."

Appellant next alleges that the trial court committed error when it denied the defense's request for polygraph and narco-synthesis testing on appellant. We do not agree. The polygraph test, even if conducted, would be inadmissible and, therefore, of no value to appellant. See *Commonwealth v. Brooks*, 454 Pa. 75, 309 A.2d 732 (1973), and *Commonwealth v. Saunders*, 386 Pa. 149, 125 A.2d 442 (1956). The narco-synthesis test would also be inadmissible. This type of test is designed to probe the patient's mind and secure information about the patient that he would not ordinarily divulge. This information, if obtained, would have no relevancy in the trial of a criminal case. At best, it would be inadmissible hearsay.

Appellant next alleges that the court committed error in the voir dire when it allowed the Commonwealth to challenge for cause those persons who expressed a personal antipathy to capital punishment. We find this argument to be without merit. Appellant in this case was not sentenced to death, but rather life

imprisonment. It was, therefore, not error to exclude such jurors. See *Commonwealth v. Sullivan,* 446 Pa. 419, 432-433, 286 A.2d 898 (1971).

Appellant finally alleges that the trial court committed error when it denied appellant's request to file additional reasons for a motion for a new trial, according to Rule 1123 of Pennsylvania Rules of Criminal Procedure. Rule 1123 provides, in part, as follows:

"(a) A motion for a new trial shall be filed within seven days after verdict, or within such additional time allowed by the court during the seven-day period.

"(b) A motion for a new trial shall be in writing, and the grounds shall be specified. All allegations of fact not of record shall be supported by affidavit. Leave to state additional specific grounds after the transcript is lodged must be sought within the period allowed pursuant to section (a) of this Rule or within such further time as the court may allow. Only the grounds so raised may be argued before the court."

The trial court, in passing upon this allegation of error, reasoned as follows: "Here the Defendant urges that as a matter of right every defendant has the right to file additional reasons for a new trial after the record has been transcribed, Rule 1123 is otherwise: No reason is alleged for the extension of time by the Defendant here. . . ."

The rule provides that a defendant may request *leave* to file additional reasons for a new trial. This does not imply that a defendant can file these as a matter of right, but it is a matter of discretion with the trial court. In the facts of this case, we fail to see an abuse of that discretion. The same attorney who tried the case represented appellant in his post-trial motions. He should, therefore, have been aware of what issues he intended to raise. Appellant's counsel filed a supplemental brief, after argument before our court, in which he alleged two additional trial errors which he contends

he would raise if allowed to file additional post-trial motions. However, our examination of the record discloses that one of these allegations was, in fact, raised in appellant's post-trial motions, and the other, relating to the use of allegedly gruesome photographs, could certainly have been raised by counsel without the necessity of referring to the transcript.

Judgment of sentence affirmed.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

Mr. Justice EAGEN concurs in the result.

CONCURRING OPINION BY MR. JUSTICE NIX:

While I am in agreement with the resolution of the instant appeal, I am compelled to concur only in the result. I differ with the Court's finding that the lower court committed no error in denying defense counsel's request, prior to trial, for permission to perform polygraph and narco-synthesis testing upon appellant. The majority reasoned that the information gathered from the two requested tests would not be admitted in the trial of the case. Admitting the accuracy of this conclusion under present law, it does not provide an answer to the issue raised. These requests were made not for the purpose of offering the results as evidence at trial but rather to aid in the preparation of the defense. It was asserted that these tests would better enable defense counsel to evaluate the evidence with regard to appellant's intent and capacity in determining his criminal responsibility. The question presented is whether there was any basis for refusing these procedures in the preparation of the defense.

The request for these tests was clearly reasonable under the circumstances. The extensive use of the tests by the prosecution in criminal investigation indicates that they are recognized investigatory tools. Furthermore where, as here, the state would not be put to any

expense in the administration of the tests, and there was no claim of unreasonable disruption of the prison routine or threat to prison security, there is, in my judgment, no basis for denying the request. Had appellant been released on bail, this testing would have been available to him. I can only conclude that the denial of access to these investigatory tools resulted solely from the fact of his status as a detainee.[1]

While I believe that the court's ruling was error, I would not disturb the judgment of sentence in absence of a showing of prejudice resulting from the error.

I am in accord with the majority's resolution of the assignment of error charging prosecutorial misconduct. At the core of the complaint is the assertion that the statement during the closing argument for the Commonwealth, "this man has just committed murder," is an expression of a personal belief as to the guilt of the accused. The distain for this practice which has been expressed from the early decisions of this Court, *Commonwealth v. Ronello*, 251 Pa. 329, 96 A. 826 (1916) is based upon a recognition that this unsworn evidence conveys to the jury the unwarranted inference that the prosecutor possesses by virtue of his office additional information which removes any question of doubt as to the guilt of the accused. See *Commonwealth v. Shoemaker*, 240 Pa. 255, 87 A. 684 (1913). The essence of this particular assignment of error is not its inflammatory character but rather its suggestion of an improper and unwarranted inference.

---

[1] The only legitimate purpose served by holding in jail those who are unable to make bond is to make certain they are present for arraignment and trial. Incursions on other rights are only permissible where they are related to behavior which poses a clear danger to prison security or fosters significant breaches of prison discipline or constitutes substantial interference with orderly institutional administration. See National Advisory Commission on Criminal Justice Standards and Goals, Rights of Pretrial Detainees, Standard 4.8 (1973).

Reading the statement objected to herein, in context,[2] I am satisfied that it did not convey an expression of the prosecutor's personal belief. In my judgment this statement was no more than an argument that appellant's behavior at the scene of the accident with the Zerbys was consistent with the actions of one who had just committed the crime charged. There was no insinuation of other information which conclusively proved guilt. It was clear that the basis for the conclusion, at that point, that appellant was guilty as charged, flowed from the facts that had been recited immediately before the statement. While, admittedly clumsily executed, counsel did no more than attempt to urge the jury to accept the legitimate inferences which he believed flowed from the Zerbys' version of the encounter.

Mr. Justice POMEROY joins in this opinion.

-----

[2] The majority opinion fully set forth the discussion during which the statement was made.

-----

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

In my view the prosecutor's closing argument was inflammatory, and impermissibly expressed his belief that appellant was guilty. Here the district attorney told the jury, "This man has just committed murder." This certainly is not an argument that the evidence establishes guilt. *Commonwealth v. Wilcox*, 316 Pa. 129, 173 A. 653 (1934). Such a positive statement of guilt is unprofessional conduct. See ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function § 5.8 (Approved Draft, 1971);[1]

-----

[1] See ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function § 5.8(b), Commentary at 128 (Approved Draft, 1971).

"Such expressions by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of his office

ABA Code of Professional Responsibility, DR 7-106 (C) (4) (1969).

This Court has often condemned a prosecutor's injection of unsworn and inflammatory evidence. *Commonwealth v. Lipscomb*, 455 Pa. 525, 317 A.2d 205 (1974) ; *Commonwealth v. Toth*, 455 Pa. 154, 314 A.2d 275 (1974) ; *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972) ; *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971).[2] Most recently we granted a new trial because of the prosecutor's references to the victim of a homicide as the "best witness" and his "testifying" what this "best witness" would have said had he been in court. We further concluded that the prosecutor's description of the defendant and his associates as "hoodlums" and "animals" amounted to a prejudicial expression by the prosecutor of his personal belief in the guilt of the accused. *Commonwealth v. Lipscomb*, supra.

In *Commonwealth v. Potter*, supra, we concluded that the prosecutor's branding of defendant's testimony as a "malicious lie" was prejudicial error requiring a

and undermine the objective detachment which should separate a lawyer from the cause for which he argues. Such argument is expressly forbidden. ABA Code DR 7-106(C) (4) ; DRINKER, LEGAL ETHICS 147 (1953). Many courts have recognized the impropriety of such statements. Annot., 50 A.L.R.2d 766 (1956). This kind of argument is easily avoided by insisting that lawyers restrict themselves to statements which take the form, 'The evidence shows . . .' or some similar form. The experienced American and British advocate will say, for example, 'I leave it to you whether this evidence does not suggest . . .' etc. Harris v. United States, 402 F.2d 656, 657-59 (D.C. Cir. 1968)." See also ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function § 1.1 (Approved Draft, 1971).

[2] See *Commonwealth v. Meyers*, 290 Pa. 573, 139 A. 374 (1927) ; *Commonwealth v. Cicere*, 282 Pa. 492, 128 A. 446 (1925) ; *Commonwealth v. Bubnis*, 197 Pa. 542, 47 A. 748 (1901) ; *Commonwealth v. Nicely*, 130 Pa. 261, 18 A. 737 (1889).

new trial. As in *Lipscomb,* we found that the attempt to introduce into evidence the district attorney's personal opinion constituted impermissible prosecutorial conduct.

Is not the prosecutor's conduct here more prejudicial than characterizing the defendant as a liar or a hoodlum? The declaration "This man has just committed murder," goes not just to the accused's credibility or character, but, if accepted by the jury, decides the ultimate issue—guilt or innocence. Expression of the prosecuting attorney's belief in the accused's guilt deprived appellant of a fair trial.

It has long been the law in this Commonwealth that "no man on trial for murder can be officially characterized as a murderer or as 'a cold-blooded killer,' until he is adjudged guilty of murder or pleads guilty to that charge." *Commonwealth v. Capalla,* 322 Pa. 200, 204, 185 A. 203, 205 (1936).[3] Characterization of the accused as a murderer is precisely what the prosecutor did here and no amount of sophistry can change this impermissible remark into a proper closing argument.

The trial court's instruction to the jury did not dispel the prejudice resulting from the prosecutor's remark. See *Commonwealth v. Toth,* 455 Pa. 154, 314 A.2d 275 (1974). A proper cautionary instruction requires more than the simple admonition that if you believe an opinion has been expressed, you should disregard it. The instruction should preferably be given immediately after the prejudicial event and repeated in the charge to the jury. It should be specifically tied to the facts, and, it should clearly and firmly advise the jury that the prejudicial event must be disregarded.

---

[3] We followed *Capalla* in our most recent prosecutorial misconduct case, *Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A.2d 205 (1974). See also *Berger v. United States,* 295 U.S. 78, 88, 55 S. Ct. 629, 633 (1935).

See *Commonwealth v. Martinolich,* 456 Pa. 136, 318 A.2d 680 (1974).

The prosecutor's remark was a gross indiscretion. The trial judge was bound to negate, by an immediate direction and in his charge, the prejudicial impact of the statement. The effect of the prosecutor's inflammatory and conclusory statement, and the trial court's ineffectual instruction was to permit the prosecution in its closing argument to put before the jury "unsworn unchecked testimony" offered by an officer of the court —the district attorney. I cannot agree that on this record appellant received a fair trial. See ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 5.10 (Approved Draft, 1972).

I dissent.

Mr. Justice MANDERINO joins in this dissent.