331 A.2d 478

COMMONWEALTH of Pennsylvania

v.

John Taylor DUKES, Appellant.

Supreme Court of Pennsylvania.

Argued April 29, 1974.

Decided Jan. 27, 1975.

182

John S. Manos, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Div., Paul Sullivan, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

On May 7, 1971, the appellant, John Taylor Dukes, was arrested and charged with the murder of Thomas Brooks. Appellant was tried before a jury and found guilty of murder in the second degree. Motions for a new trial and in arrest of judgment were denied, and Dukes was sentenced to not less than five nor more than twenty years imprisonment. This direct appeal followed.[1]

At trial the Commonwealth introduced evidence that at approximately 4:25 p. m. on September 26, 1970, one Thomas Brooks, who was sitting on the steps outside a building at the corner of 3rd and Callowhill Streets in Philadelphia, was fatally struck twice on the head by a man wielding a two-by-four plank. At trial a Philadelphia police officer, Leonard Indelicato, identified appellant as being the same person whom he had arrested nearby shortly after the time Brooks was attacked, carrying a "two-by-four" and apparently intoxicated. Two additional witnesses testified that they had seen appellant in the vicinity of 3rd and Callowhill Streets about the time of the Brooks attack, and that he was swinging a "two-by-four" at various people. Medical testimony established that Brooks died as a result of head injuries. Appellant's defense was alibi: he testified that he was living in Harrisburg on September 26, 1970, and introduced evidence that he had been in the Harrisburg Department of Public Assistance on September 25 and September 28.

Appellant asserts that four errors on the part of the trial court deprived him of a fair trial. We disagree, and will affirm.

1. Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1974).

Appellant's first contention is that he was denied due process of law. The basis of this claim is that the jurors before whom he was tried for the Brooks murder were drawn from the same panel of veniremen as were the jurors before whom he had been previously tried (and acquitted) on another charge of murder. Although none of the jurors in the instant case had in fact served on the jury in the previous case, it is argued that they may well have become aware, through contact with their fellow panel members, that appellant had been accused of another crime.

There is no doubt that a defendant who is tried before jurors who know or may know that he has been charged with another crime is deprived of his right to a trial before a fair and impartial jury. *Commonwealth v. Bobko,* 453 Pa. 475, 309 A.2d 576 (1973); *Commonwealth v. Rivers,* 218 Pa.Super. 184, 279 A.2d 766 (1971); *Commonwealth v. Trapp,* 217 Pa.Super. 384, 272 A.2d 512 (1970); *Commonwealth v. McDaniel,* 217 Pa. Super. 20, 268 A.2d 237 (1970); *Commonwealth v. Free,* 214 Pa.Super. 492, 259 A.2d 195 (1969). In the case last cited, for example, the Superior Court held that the defendant was entitled to a new trial because the jury had been selected from the same panel from which the jury for a previous trial of the same defendant had been drawn; indeed, seven of the petit jurors had actually participated in the voir dire examination in connection with the first trial, and apparently no precautionary measures had been taken by the trial court.

In the case at bar, contrary to the situation in *Free, supra,* the trial judge was meticulously careful to ascertain that no member of the jury was aware of the previous trial. The late Judge Reed presided at both trials. Prior to the voir dire in the instant case, he asked any panel member who had ever seen him before to step forward, and those who did so were forthwith separated from the other prospective jurors and were disqualified

from serving on the jury. It was ascertained that none of those who were thus disqualified had discussed the previous trial with any other members of the panel, and the judge cautioned against doing so. Defense counsel was then permitted to question the veniremen as to any possible disclosures.

Appellant argues that these precautions were unavailing because a certain panel member who was being questioned on voir dire said that she had heard a juror on another panel openly discussing appellant's previous trial in the jury room. After this disclosure each of the ten jurors who had already been selected was again examined as to whether he or she had heard anything about the case.[2] No one responded affirmatively.

■ We are satisfied that the careful precautionary measures taken by the trial judge adequately served to insure the selection of a fair and impartial jury, one untainted by any knowledge that Dukes had been charged with another crime. There was thus no probability of any prejudice to appellant. See *Commonwealth v. Hoss*, 445 Pa. 98, 103–109, 283 A.2d 58, 61–64 (1971). The

2. The following is an example of the questioning which occurred at this point:

THE COURT: Now, Mrs. McInnis, I want you to treat as absolutely confidential what is about to transpire between you and the Court. I am going to ask you certain questions, and at no time hereafter should you divulge what took place now in the courtroom to anyone, not even your fellow jurors.

I want you to search back into your memory as completely as you can and see if you can recall ever hearing anything at all about this case or this defendant other than what the attorneys told you.

JUROR NUMBER 2: No, I haven't.

THE COURT: Now, speak up louder.

JUROR NUMBER 2: No, I haven't.

THE COURT: You are as certain as you can be that you do not recall ever hearing anything at all about either the case or the defendant himself?

JUROR NUMBER 2: Yes, I am.

THE COURT: Now, again I caution you don't discuss with any of the other jurors, nor with anyone at any time, what took place between you and the Court. Thank you very much.

case at bar stands in contrast to cases such as *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) and *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), where the Court found "such a probability that prejudice will result" that the trial was "deemed inherently lacking in due process". *Estes v. Texas*, supra, 381 U.S. at 543, 85 S.Ct. at 1633. It is also in contrast to *Commonwealth v. Stewart*, 449 Pa. 50, 295 A.2d 303 (1972). In that case we found, as had the Supreme Court of the United States in *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), that the "potentialities of harm" which inhered in the situation were such that a new trial was required "for the sake of insured fairness". 449 Pa. at 55, 56, 295 A.2d at 306. In *Stewart* the father of the victim of the murder for which the defendant was being tried had been on the panel of veniremen from which the trial jury had been drawn. The trial court had denied the defendant's motion to withdraw a juror "without a hearing or an inquiry of the jurors selected to try the case, as to whether any of them had any type of conversation or association with [the father] before being accepted as jurors in the case." *Id.* at 52, 295 A.2d at 304.

The second claim of error also goes to the jury selection process. Appellant argues that the trial court erred in refusing to permit defense counsel, on voir dire, to question veniremen as to their attitudes toward alcoholism and public welfare recipients. In *Commonwealth v. McGrew*, 375 Pa. 518, 525–526, 100 A.2d 467, 470–471 (1953), this Court said:

"The examination of jurors under voir dire is solely for the purpose of securing a competent, fair, impartial, and unprejudiced jury . . . [C]ounsel . . . should [not] be permitted . . . to ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion may be or what his attitude or decision will likely be under

certain facts which may be developed in the trial of the case. While considerable latitude should be permitted on a voir dire, the inquiry should be strictly confined to disclosing qualifications or lack of qualifications of a juror and whether a juror has formed a fixed opinion or may be otherwise subject to disqualification for cause.

\* \* \* \* \* \* \* \*

"It is also well settled that the scope of a voir dire examination rests in the sound discretion of the trial Judge and his decisions, even in a challenge for cause, will not be reversed in the absence of palpable error. . . ."

Illustrative of this general statement as to the scope of voir dire examination is our recent decision in *Commonwealth v. Biebighauser*, 450 Pa. 336, 300 A.2d 70 (1973). We there held that it was within the trial court's discretion to preclude questions probative of prospective jurors' attitudes toward the insanity defense. Similarly, in *Commonwealth v. Johnson*, 452 Pa. 130. 305 A.2d 5 (1973), we upheld the trial court's barring of questions related to alcoholic beverages and psychiatric testimony. In the latter case we said:

"The law recognizes that it would be unrealistic to expect jurors to be free from all prejudices, a failing common to all human beings. We can only attempt to have them put aside those prejudices in the performance of their duty, the determination of guilt or innocence." *Id.* at 136, 305 A.2d at 8.

■ In the case before us the only evidence tending to suggest intoxication was that contained in Officer Indelicato's account of his arrest of appellant, and the only evidence of welfare benefits was that which Dukes introduced to establish his whereabouts one day before and two days after the attack upon Brooks. This evidence was altogether incidental to the basic issue in the case,

viz., whether Dukes was the killer. In the light of all the evidence presented, it could have had but minimal impact upon the jury. We conclude, therefore, that the trial court did not abuse its discretion in precluding questions designed to reveal the probable reactions of the prospective jurors to such evidence.

The third assignment of error, also related to the voir dire examination, is that the trial court erred in permitting the Commonwealth to challenge for cause veniremen who expressed some reluctance to impose the death penalty. In *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) the Supreme Court of the United States held "that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected." *Id.* at 522–523, 88 S.Ct. at 1777, 20 L.Ed.2d at 784–785. Yet, the Court also stated that "[i]n light of the presently available information, we are not prepared to announce a per se constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was." *Id.* at 518, 88 S.Ct. at 1775, 20 L.Ed.2d at 782. Thus, while the imposition of the death penalty was reversed in *Witherspoon*, the conviction of murder was allowed to stand. In *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), decided the same day as was *Witherspoon*, the Court rejected a challenge to a conviction of rape imposed by a jury from which those who had conscientious scruples against the death penalty had been excluded. The Court declined to apply *Witherspoon* because the *Bumper* jury had recommended a sentence of life imprisonment, not the death penalty.

█ Consonant with these cardinal decisions of the Supreme Court of the United States, this Court has re-

peatedly held that in cases in which the death penalty has not been imposed or in which a sentence of death has been imposed but cannot be carried out as a result of the decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), noncompliance with the *Witherspoon* standard of jury selection is irrelevant. *Commonwealth v. Russell*, Pa., 326 A.2d 303 (1974); *Commonwealth v. Talley*, 456 Pa. 574, 318 A.2d 922 (1974); *Commonwealth v. Stafford*, 450 Pa. 252, 299 A. 2d 590 (1972), cert. denied, 412 U.S. 943, 93 S.Ct. 2775, 37 L.Ed.2d 404 (1973); *Commonwealth v. Kenney*, 449 Pa. 562, 569, 297 A.2d 794 (1972); *Commonwealth v. Speller*, 445 Pa. 32, 282 A.2d 26 (1971); *Commonwealth v. Roach*, 444 Pa. 368, 282 A.2d 382 (1971); *Commonwealth v. Ingram*, 440 Pa. 239, 270 A.2d 190 (1970); *Commonwealth v. Wilson*, 431 Pa. 21, 244 A.2d 734 (1968), cert. denied, 393 U.S. 1102, 89 S.Ct. 901, 21 L. Ed.2d 794 (1969).

Appellant was not sentenced to death nor could he have been upon conviction of murder in the second degree.[3] It is true that the Commonwealth introduced testimony which tended to show that appellant was intoxicated at the time of his arrest and that such intoxication would negate the specific intent necessary for a finding of murder in the first degree. This evidence, however, was not so strong as to compel the conclusion that the Commonwealth knew, before trial, that this would be a case in which the death penalty could not be imposed. As we said in *Commonwealth v. Roach, supra,*

"It appears to us that the only circumstances under which the *Witherspoon* decision will be extended is where the defendant can prove that the jury was 'prosecution prone' and therefore he was denied a fair trial on the issue of *guilt*. See *Witherspoon* and

3. See Act of June 24, 1939, P.L. 872, § 701, as amended. This Act was repealed by Act of December 6, 1972, P.L. 1482, No. 334, § 5.

▮▮▮▮▮▮▮▮▮▮

*Bumper,* supra. In both of those cases however, the Court rejected the theory that disqualifying jurors merely because of their objection to the imposition of the death penalty under any circumstances affected the neutrality and fairness of the jury on the issue of guilt. In the instant case, there is absolutely nothing on the record that the jury was anything but impartial on the issue of guilt". 444 Pa. at 371, 282 A.2d at 384.

▮▮ Finally, appellant contends that the trial court erred in failing to charge the jury on the presumption of innocence. At trial, however, appellant failed to take exception to the failure of the court so to charge; he may not, therefore raise this point as a reason for a new trial, Pa.R.Crim.P. 1119(b), 19 P.S.Appendix, nor will it be entertained on appeal. *Commonwealth v. Carbonetto,* 455 Pa. 93, 314 A.2d 304 (1974); *Commonwealth v. Dancer,* 452 Pa. 221, 305 A.2d 364 (1973). Appellant urges us to consider the alleged error nevertheless on the ground that it was basic and fundamental. The doctrine of basic and fundamental error in criminal appeals having been recently discarded, *Commonwealth v. Clair,* Pa., 326 A.2d 272 (1974),[4] no point would be served by an analysis of whether or not the asserted error would qualify for that exception.

Judgment of sentence affirmed.

ROBERTS and NIX, JJ., concur in the result.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice (dissenting).

I dissent. For *more than a week,* the panel of prospective jurors from which the jury that convicted appellant for the Brooks murder was selected had been in

4. The writer of this opinion, joined by Mr. Justice Eagen and Mr. Justice O'Brien filed a dissenting opinion in *Clair,* 326 A.2d at 274.

more or less continual contact with prospective jurors from which the jury that acquitted appellant of a separate murder charge had been selected. Citing *Commonwealth v. Bobko*, 453 Pa. 475, 309 A.2d 576 (1973), the majority concedes that an accused is deprived of his right to a trial before a fair and impartial jury where it is possible that the jury "may know" that he has been charged with another crime. The majority then concludes that *Bobko* is inapposite because in the instant case the trial court questioned the members of the jury as to whether they had ever heard of the defendant or his case before, and because this questioning elicited no positive responses.

The majority opinion, however, overlooks *Commonwealth v. Stewart*, 449 Pa. 50, 295 A.2d 303 (1972). In *Stewart*, we expressly rejected the prosecution's argument that there was no taint on the jury panel because each juror selected for trial responded negatively to voir dire questioning as to whether or not they knew anyone connected with the case. In *Stewart* we said,

"[a]ssuming this to be true, the possibility still remains that some incident occurred during their assocation on the jury panel with the victim's father, which was so inherently prejudicial that it rendered impartiality impossible." *Id.* at 57–58, 295 A.2d at 307.

Likewise in the instant case, the "possibility remains" that some incident or comment about the defendant by a member of the panel from the previous murder trial could have "predisposed" the mind of a juror selected for the second murder trial. Impartiality could thus have been rendered impossible. *See Commonwealth v. Santiago*, 456 Pa. 265, 318 A.2d 737 (1974). *Commonwealth v. Bobko*, 453 Pa. 475, 309 A.2d 576 (1973).

The guarantee of a fair and impartial jury is fundamental to our criminal justice system, and the remedy of postponing until the next criminal court term so simple, that a defendant should not be required to risk present-

**192**

ing his case to a jury drawn from the same panel as a jury before which he has previously been tried. *Cf. Commonwealth v. Stewart,* 449 Pa. 50, 295 A.2d 303 (1972), *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965).