727 A.2d 545

COMMONWEALTH of Pennsylvania, Appellee,

v.

Daniel JACOBS, Appellant.

Supreme Court of Pennsylvania.

Submitted May 11, 1998.

Decided March 26, 1999.

Reargument Denied May 27, 1999.

---

142

Robert Brett Dunham, Philadelphia, for D. Jacobs.

Thomas Kelley for Com.

Robert A. Graci, Harrisburg, for Office of Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

This is a direct appeal from the order of the Bucks County Common Pleas Court denying Appellant, Daniel Jacobs's petition under the Post Conviction Relief Act [1] (PCRA) in a capital

1. Act of May 12, 1982, P.L. 417, No. 122, *as amended,* April 13, 1988, 42 Pa.C.S. § 9541 et seq.

case.[2] For the reasons that follow, we affirm.

Appellant was convicted of two counts of first degree murder for the deaths of Tammy Mock and Holly Jacobs, the girlfriend and daughter of Appellant, respectively. Following the penalty phase of his trial, Appellant was sentenced to death for the murder of Tammy Mock and life imprisonment for the murder of Holly Jacobs. This Court affirmed the judgment of sentence in *Commonwealth v. Jacobs*, 536 Pa. 402, 639 A.2d 786 (1994), which sets forth a more detailed recitation of the factual history.

On January 13, 1997, Appellant filed a *pro se* PCRA petition. Following the appointment of counsel, an amended petition was filed. The PCRA court conducted hearings at which Appellant was permitted to orally amend his PCRA petition to include additional issues. Following a hearing, the court denied Appellant's petition and this appeal followed.[3]

Appellant raises 15 issues in his appeal. Most of these issues were not raised in his original PCRA petition, counsel's amended petition, or the oral amendments made to his petition before the PCRA court. Because we no longer apply relaxed waiver in PCRA cases, *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998), these issues are waived. However, because many of these claims have been raised in terms of PCRA counsel's ineffectiveness for failing to raise such issues, they fall within the purview of this court's examination. See *Id.* 554 Pa. at 60–61, 720 A.2d at 708 (the relief available to an appellant for a claim that PCRA counsel's judgment was exercised in a legally ineffective manner is an evaluation of the underlying claims prior counsel has foregone). We now turn to the issues raised by Appellant on appeal.[4]

**2.** This Court directly reviews the denial of post-conviction relief in death penalty cases. 42 Pa.C.S. § 9546(d).

**3.** This Court's review of the denial of post-conviction relief is limited to an examination of whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error. *Commonwealth v. Morales*, 549 Pa. 400, 408, 701 A.2d 516, 520 (1997).

**4.** We note that Appellant includes several "sub-issues" under the general questions presented for review in his brief. However, many of the

144

 Appellant asserts several claims regarding trial counsel's ineffectiveness that were brought before the PCRA court. With respect to claims of ineffective assistance of trial counsel, Appellant is required to establish that the claim has arguable merit; that trial counsel had no reasonable basis for proceeding as he did; and that the alleged ineffectiveness of counsel so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Collins,* 546 Pa. 616, 619, 687 A.2d 1112, 1113 (1996); 42 Pa.C.S. § 9543(a)(2)(ii). The law in Pennsylvania presumes counsel to be effective. *Commonwealth v. Cross,* 535 Pa. 38, 634 A.2d 173 (1993); *Commonwealth v. Pierce,* 515 Pa. 153, 159, 527 A.2d 973, 975 (1987).

 First, Appellant maintains that trial counsel was ineffective in failing to ensure through voir dire that he would be tried by a fair and impartial jury specifically, where, as here, trial counsel failed to request a change of venue despite highly prejudicial pretrial publicity.[5]

The PCRA court rejected this assertion, noting that in the course of voir dire the jurors were specifically questioned about their knowledge of the case, their exposure to publicity about the case and whether they had formed any opinions about Appellant's guilt or innocence. Given this thorough questioning, the PCRA court concluded that counsel was not ineffective in failing to request a change of venue.

Our review of the matter reveals that the record supports the PCRA court's determination. Both the prosecutor and trial counsel asked the potential jurors whether they had heard or read anything about the case. N.T. September 14, 1992 at 10–11; 33. Some jurors stated that they had and they

allegations contained in these "sub-issues" were not raised before the PCRA court, nor are they asserted in terms of PCRA counsel's ineffectiveness. Accordingly they have been waived and will not be addressed. *Id.*

5. As a sub-issue, Appellant argues that trial counsel was ineffective in failing to question individual jurors regarding their possible race bias since Appellant is black and the victims were white. This claim, however, was neither brought before the PCRA court nor raised in terms of PCRA counsel's ineffectiveness; it is therefore waived.

were further questioned about whether their ability to decide the case would be affected. *Id.* at 33–47. Again during individual voir dire, jurors were asked about their exposure to pre-trial publicity and challenges for cause were made. Each challenge was ruled on by the trial judge based on the jurors' individual responses.

 It is the trial judge who must interpret the answers and demeanor of all potential jurors to evaluate their ability and willingness to render a fair verdict. *Commonwealth v. Lane,* 521 Pa. 390, 555 A.2d 1246 (1989). There is no evidence in the record or allegation suggesting that the trial judge abused his discretion in this regard.

As any potential bias on the part of jurors relating to their exposure to pre-trial publicity was sufficiently dealt with during voir dire, there was no basis for the trial court to grant a change of venue. Accordingly, trial counsel cannot be deemed ineffective for failing to seek such relief. See *Commonwealth v. Tilley,* 528 Pa. 125, 595 A.2d 575 (1991) (counsel cannot be ineffective for failing to assert a meritless claim).

 Next, Appellant maintains that trial counsel was ineffective in failing to adequately investigate and present evidence supporting a diminished capacity defense. The PCRA court rejected this assertion as the record clearly revealed that trial counsel pursued such a defense on behalf of Appellant.

Specifically, trial counsel testified at the PCRA hearing regarding his efforts in this regard. He stated that initially when he suggested to Appellant that a psychiatric evaluation should be conducted, Appellant rejected the idea claiming his sanity. N.T. May 29, 1997 at 29–30. Trial counsel stated that he was able to convince Appellant to submit to a psychiatric evaluation and that he arranged for such evaluation to be performed. Following this examination, trial counsel was contacted by the examining psychiatrist and told that, in his opinion, Appellant was sane and knew what he was doing at the time of the alleged crimes. Counsel, therefore, told the

psychiatrist not to issue a report and he was not called to testify at trial. *Id.* at 31.

Nevertheless, consistent with Appellant's trial testimony, trial counsel pursued a diminished capacity defense in regards to the killing of Tammy Mock. Appellant testified at trial that he was not responsible for Holly Jacobs's death. He stated that when he handed Holly Jacobs to Tammy Mock, who was in the bathtub, Mock drowned Holly. See *Commonwealth v. Jacobs*, 536 Pa. at 409, 639 A.2d at 790. Appellant testified that after this incident occurred, he "lost it" and killed Tammy Mock. Given this admission, trial counsel argued that Appellant was incapable of forming a specific intent to kill given his mental state at the time of the killing.

Based on the results of the psychiatric evaluation, and given Appellant's trial testimony, it is clear that trial counsel did investigate and pursue a diminished capacity defense on behalf of Appellant to the best of his ability. Accordingly, as trial counsel had a reasonable basis for proceeding as he did, he cannot be deemed ineffective.

Appellant next claims that trial counsel was ineffective in failing to discover and present evidence that Appellant's mother, Delois Jacobs, had a long history of alcoholism and was intoxicated at the time Appellant allegedly confessed to her.

Appellant's mother gave a statement to police prior to Appellant's trial wherein she stated that Appellant telephoned her shortly after the crimes were committed and admitted to her that he had killed both Tammy Mock and Holly Jacobs. Later, at the preliminary hearing, she gave substantially the same testimony. At trial, however, she testified that Appellant admitted killing Tammy Mock but that she was not sure what Appellant said regarding the baby, Holly Jacobs. She testified that she was upset at the time of the conversation and may not have accurately understood what Appellant said regarding the death of the baby.

Appellant argues that counsel should have cross-examined his mother regarding her alcoholism and the fact that she may

have been drunk at the time of her conversation with Appellant. The PCRA court rejected this argument noting, first, that there was no evidence that Appellant's mother was intoxicated at the time of her telephone conversation with Appellant.[6] Moreover, trial counsel testified that because the testimony Appellant's mother gave at trial was consistent with Appellant's own testimony, it was important, from Appellant's point of view, that her current recollection of the telephone conversation be viewed as accurate by the jury. Thus, he did not feel it would be wise to attempt to undermine her current recollection by cross-examining her regarding her alcoholism.[7] N.T. May 29, 1997 at 40.

Thus, because trial counsel had a reasonable basis for proceeding as he did, he was not ineffective.

Next, Appellant contends that trial counsel was ineffective at the penalty phase for failing to request the court to instruct the jury that if Appellant were given a life sentence, it would mean life without the possibility of parole. The PCRA court concluded that trial counsel could not be deemed ineffective for failing to request a charge based upon *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), since Appellant's future dangerousness was not at issue. We agree.

A review of the record reveals that the Commonwealth did not raise Appellant's future dangerousness before the jury. Thus, trial counsel was not ineffective for failing to request a *Simmons* instruction.[8]

6. In fact, Appellant's current counsel has provided an affidavit given by Appellant's mother; nowhere does she claim to have been intoxicated at the time of her telephone conversation with Appellant. See Appellant's brief, Appendix 11.

7. By contrast, the Commonwealth treated Appellant's mother as a hostile witness and sought to have her prior statements introduced into the record. Obviously, her trial testimony was inconsistent with the Commonwealth's case against Appellant.

8. Under the current state of the law, a *Simmons* instruction is not required where future dangerousness was not raised; however, consistent with my concurring opinion in *Commonwealth v. Robinson*, 554 Pa. 293, 721 A.2d 344 (1998), I believe the better approach is to provide a

148

The remainder of the claims raised by Appellant were not asserted before the PCRA court. Accordingly, they are waived. Nevertheless, because a number of these claims allege PCRA counsel's ineffectiveness in failing to raise them, we will review them in this context.[9]

Regarding claims of ineffective PCRA counsel, we have recognized that although no federal constitutional right to counsel in a state collateral proceeding exists, because indigent PCRA petitioners have a procedural right to PCRA counsel by way of Pennsylvania Rule of Criminal Procedure 1504(a), PCRA counsel must discharge their responsibilities thereunder and a remedy may be fashioned where counsel fails to do so. *Commonwealth v. Priovolos,* 552 Pa. 364, 715 A.2d 420 (1998).

 As noted previously, we will grant relief for counsel's ineffectiveness where Appellant has shown that there is merit to the underlying claim; that counsel had no reasonable basis for his course of conduct; and finally, that there is a reasonable probability that but for the act or omission in question, the outcome of the proceeding would have been different. *Commonwealth v. Jones,* 546 Pa. 161, 175, 683 A.2d 1181, 1188 (1996). Appellant bears the burden of proving all three prongs of this standard. *Commonwealth v. Baker,* 531 Pa. 541, 614 A.2d 663 (1992). We now turn to the specific allegations of ineffectiveness regarding PCRA counsel's representation.

standardized instruction in all cases, which should be implemented prospectively.

9. The following issues, raised in Appellant's appeal, were not raised before the PCRA court, nor were they raised in terms of PCRA counsel's ineffectiveness. They are, therefore, waived and will not be discussed:

Whether Appellant was denied his rights, under the United States and Pennsylvania Constitutions, to due process and to a fair and impartial trial when the prosecutor engaged in improper argument, where defense counsel failed to object, and where the court took no action to cure the error.

Whether Appellant's death sentence must be vacated because the "proportionality review" performed by this Court on direct review did not provide him the meaningful proportionality review mandated by 42 Pa.C.S. § 9711(h)(3)(iii) and state and federal constitutional law.

Appellant asserts that trial counsel and PCRA counsel were ineffective in failing to discover and present at the penalty phase evidence that Appellant suffers from mental retardation, organic brain damage and the effects of a traumatic and neglectful childhood. Appellant has attached to his brief, by way of appendices, the affidavits of Dr. Robert Davis, the psychiatrist who originally evaluated Appellant at the request of trial counsel, Dr. Patricia Fleming, a clinical psychologist who, at the request of current counsel, conducted psychological examinations of Appellant, and Dr. Julie Kessel, a psychiatrist. In their affidavits, these medical professionals opine that Appellant suffers from mild mental retardation and that he has a variety of cognitive, social, intellectual, emotional and personality disorders as a result of his childhood and upbringing. They state in their affidavits that they would have been willing to testify at the penalty phase of Appellant's trial if they had been asked to do so. Also provided are the affidavits of various family members, including Appellant's mother, describing Appellant's background and upbringing. They state that Appellant was brought up in a poor environment, that his mother had a drinking problem and that Appellant is not well adjusted. Appellant alleges that had this information been provided to the jurors at the penalty phase, their imposition of the death penalty might have been different. Appellant, accordingly, asserts that he was prejudiced by counsel's failures in this regard and that he is entitled to a new penalty hearing, or, at a minimum, a remand for a hearing before the PCRA court. We disagree.

As noted in the foregoing discussion regarding diminished capacity, it is clear that trial counsel conducted an investigation into Appellant's mental state. Initially, Appellant put off counsel's request that he submit to a psychiatric evaluation, claiming his sanity. Trial counsel was finally able to convince Appellant to submit to an exam and counsel had one performed. The psychiatrist, Dr. Davis, was provided with a police report detailing the alleged facts of the case. Following his examination of Appellant, Dr. Davis was of the opinion that Appellant did not suffer from any mental impairment that

would have negated his criminal responsibility. Dr. Davis informed counsel of his opinion in this regard. Dr. Davis did not recommend further psychological testing. Based on this information, trial counsel did not pursue further discussions with Dr. Davis, as he believed Dr. Davis was not helpful to Appellant's case. N.T. May 29, 1997 at 30–31.

In his affidavit, Dr. Davis states that if he had been asked to conduct an evaluation of Appellant for purposes of mitigation at the penalty phase, the scope of his examination would have been greater. He notes, however, that collateral information regarding Appellant's upbringing would have been required for him to conclude that further testing was necessary. Affidavit of Dr. Robert Davis, ¶ 6, 8, 10, 11. The record, however, fails to reveal that trial counsel was aware of the circumstances surrounding Appellant's upbringing. Nor does Appellant assert that counsel was aware of these matters.[10]

Trial counsel presented Appellant's mother's testimony at the penalty hearing. She stated that Appellant was twenty-one years old and one of four children. She testified that Appellant had a great relationship with his then five-year-old sister, that he seemed happy with his family and that he loved his daughter. She testified that she had spoken with Appellant about the events involved in the case and that he was very sad and remorseful. N.T. September 18, 1992 at 834–37. Appellant also testified at the penalty hearing. He testified that he was remorseful about what happened and that he tried to slit his wrists afterward. He stated that he loved his daughter and his five-year-old sister very much and that he did not plan the offenses.

As to Tammy Mock, the jury found as mitigating circumstances that Appellant was under the influence of an extreme

10. Although this issue was not raised before the PCRA court, trial counsel testified that at the time of Appellant's trial, he did speak with various family members who attended Appellant's trial and inquired of them as to whether they would be willing to testify at the penalty phase in the event Appellant was convicted of first degree murder. N.T. May 29, 1997 at 46. Trial counsel testified that after he talked with them, none of Appellant's family returned to the trial, or to testify at the penalty hearing. *Id.*

mental or emotional disturbance at the time the crimes were committed and that Appellant had no prior record. The jury concluded that the aggravating circumstances, that the murder was committed by means of torture [11] and that Appellant had been convicted of another murder either before or at the time of the offense at issue, outweighed the mitigating circumstances. As to Holly Jacobs, the jury concluded that the mitigating circumstances of extreme mental and emotional disturbance, remorse and his relationship with his sister outweighed the aggravating circumstances that Appellant had been convicted of another murder at or before the time of the offense and that the victim was under the age of twelve.

Appellant cites our decision in *Commonwealth v. Smith*, 544 Pa. 219, 675 A.2d 1221 (1996), as support for his assertion that trial counsel's failure to present further mitigation evidence regarding Appellant's mental incapacity at the penalty phase rendered him ineffective. In *Smith*, this Court remanded for a new sentencing hearing where trial counsel was informed by a witness that his client suffered from mental problems and failed to investigate this potentially mitigating evidence. In fact, trial counsel in *Smith* failed to present any evidence in mitigation at the penalty phase. We held that:

> *[W]here counsel is informed* that his client has suffered some mental problems that may provide evidence of mitigation in the penalty phase, counsel is ineffective if he fails to pursue such evidence. Of course, trial counsel is not ineffective for failing to submit evidence of mitigation where no such evidence exists.

*Id.* at 245, 675 A.2d at 1234 (footnote omitted) (emphasis added).

Unlike trial counsel in *Smith*, here there is no evidence or allegation that counsel was aware of Appellant's mental problems at the time of the penalty hearing. In fact, all of the evidence counsel knew of at that time indicated that Appellant was not mentally incapacitated. Nevertheless, counsel raised Appellant's mental state as a mitigating factor at the penalty

11. Tammy Mock was stabbed over 200 times.

phase and the jury found as a mitigating factor that Appellant was under an extreme mental and emotional disturbance. Additionally, unlike trial counsel in *Smith,* trial counsel here presented other mitigating evidence at the penalty hearing.

Thus, as trial counsel had a reasonable basis for his course of conduct, we conclude that he was not ineffective in this regard. See *Commonwealth v. Appel,* 547 Pa. 171, 689 A.2d 891 (1997) (counsel will not be deemed ineffective for failing to conduct further investigation into a defendant's competency when qualified experts and available facts show him to be competent).

Next, Appellant asserts that trial counsel and PCRA counsel were ineffective in not raising the trial court's failure to apply the corpus delicti rule regarding the death of Holly Jacobs. Specifically, Appellant maintains that the trial court erred in permitting into evidence the statements of Appellant's mother relating to Appellant's confessed killing of Holly Jacobs where there was no independent evidence to establish that Holly Jacobs died as a result of anything other than an accident. We find no merit to Appellant's argument.

Recently, in *Commonwealth v. Bardo,* we discussed the closely related crime exception to the corpus delicti rule. We said:

> An exception to the corpus delicti rule known as the closely related crime exception was specifically approved of by this Court.... This exception comes into play where an accused is charged with more than one crime, and the accused makes a statement related to all the crimes charged, but the prosecution is only able to establish the corpus delicti of one of the crimes charged. Under those circumstances where the relationship between the crimes is sufficiently close so that the introduction of the statement will not violate the purpose underlying the corpus delicti rule, the statement of the accused will be admissible as to all the crimes charged.

551 Pa. 140, 709 A.2d 871, 874 (1998) (citations omitted).[12]

Appellant does not dispute that the Commonwealth established the corpus delicti regarding Tammy Mock's death. See Appellant's brief at 59, footnote 27. Because Appellant's mother's statement regarding Appellant's confession related to both the death of Tammy Mock and the death of Holly Jacobs, and as the Commonwealth established the corpus delicti as to the death of Tammy Mock, the closely related crime exception to the corpus delicti rule applied. Thus, neither trial counsel, nor PCRA counsel, was ineffective in failing to raise this issue.

Next, Appellant asserts that trial counsel and PCRA counsel were ineffective in failing to raise the trial court's error in permitting into evidence unreliable inflammatory hearsay evidence that Appellant had killed for money.

This allegation relates to the trial court's admission of Appellant's mother's prior inconsistent statement given to police regarding the telephone conversation she had with Appellant shortly after the killings. Appellant complains that at trial his mother testified that although her prior statement indicated that she said Appellant committed the killings for money, she never said that. Appellant cites to the following testimony:

Q. Now, you had a chance to read this, okay.

Q. Is there anything in here that's different than the testimony that you made at the preliminary hearing on March 6?

A. Yes.

Q. Okay. And do you want to point that out for us?

A. I didn't see that line there. It was a line here that said he did it for the money. I didn't see that. This was a line

12. The policy underlying the corpus delicti rule is to prevent the admission of a confession where no crime has been committed:

The grounds on which the [corpus delicti] rule rests are the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed....

*Commonwealth v. Turza,* 340 Pa. 128, 16 A.2d 401 (1940).

right here somewhere saying that I did it for the money. I never seened (sic) that.

Q. Okay. That's in response to a question that I had asked about—talking about money and you're saying he never said anything to you about doing the killing for money, is that what you're saying?

A. Yes.

N.T. September 16, 1992 at 557–558. Based on this exchange, Appellant maintains that it was improper for the trial court to admit his mother's prior inconsistent statement in this regard.

 Although Appellant tries to limit the focus of his allegation of error on the part of the trial court regarding the admission of Appellant's mother's prior inconsistent statement, the propriety of the trial court's admission of all prior inconsistent statements was fully litigated on direct appeal. See *Jacobs,* 536 Pa. at 410–11, 639 A.2d at 790–91.[13] Thus, PCRA counsel was not ineffective for failing to raise this issue. See 42 Pa.C.S. § 9543(a)(3) (to be eligible for post-conviction relief, an appellant must establish by a preponderance of the evidence that the issues he raises have not been previously litigated).

 Next, Appellant argues that both trial counsel and PCRA counsel were ineffective in failing to assert the trial court's error in permitting Detective Dennis Williams to testify that he observed a large number of cuts on Appellant's arms and wrists that appeared to him to have been self-inflicted. Appellant asserts that because Detective Williams was not testifying as an expert, his observation regarding the nature of Appellant's wounds was improper and highly prejudicial. We disagree.

13. On direct appeal, this Court held that Appellant's mother's prior statements were admissible since they were inconsistent with her current testimony and because she testified that the statements were accurate records of what she had said. Immediately following the foregoing exchange, Appellant's mother was asked if the statement she reviewed accurately reflected what she told the detective; she responded that it did. *Id.* at 559.

Although Detective Williams was not an expert, his remarks were limited to this brief comment regarding the appearance of the cuts he personally observed on Appellant's arms. We conclude that any error that may have resulted in permitting this minor statement into evidence was harmless given the overwhelming evidence of guilt. See *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978) (harmless error is established where either the error did not prejudice the defendant; or the erroneously admitted evidence was merely cumulative of other untainted evidence; or where the properly admitted and un-contradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by compari-son that the error could not have contributed to the verdict).

██ Next, Appellant alleges both trial counsel and PCRA counsel were ineffective in failing to assert error regarding the trial court's instructions on the torture aggravating circum-stance claiming they were vague, overbroad, and erroneous. This claim has no merit.

The trial court charged the jury as follows:

For a person to commit first degree murder by means of torture he must intend to do more than kill his victim. He must intend to inflict unnecessary pain or suffering and he must do so in a manner or means that are heinous atrocious or cruel or show exceptional depravity.

This charge conforms to the language approved by this Court in *Commonwealth v. Edmiston*, 535 Pa. 210, 634 A.2d 1078, (1993); see also *Commonwealth v. Thomas*, 522 Pa. 256, 277, 561 A.2d 699 (1989); *Commonwealth v. Marinelli*, 547 Pa. 294, 329, 690 A.2d 203, 220 (1997). We, therefore, find no merit to Appellant's assertion.

██ Next, Appellant assets that trial counsel and PCRA counsel were ineffective in failing to assert the trial court's error in charging the jury at the penalty phase regarding the mitigating circumstance of Appellant's "age." We disagree.

Appellant's complaint stems from the following language:

The next possible mitigating circumstance is the age of the Defendant at the time of the crime, and I believe it's

now been confirmed that he was 21 at the time. Now there's no indication in the Statute—I mean obviously what we are talking about is youth, and if we're talking about an extremely young person, then it would be more clear cut. If we were talking about a 40–year old person, that would obviously not apply.

When you're dealing with a 21 year old, you don't have as much guidance as perhaps you might like to have. They don't say well it's this age specifically and if you're over that it counts; if you're under it, it doesn't. They just talk about the age of the Defendant so you're going to have to weigh this Defendant, his conduct, his maturity, his ability to function as an adult should, and determine whether in your opinion his age under all the facts and circumstances of this case constitute a mitigating circumstance. I'd like to give you more guidance than that but that's the language of the Statute and that's your decision to make based on that definition.

■ We conclude that nothing contained in this disputed portion of the trial court's instruction amounts to a constitutional violation, an error of law, or an abuse of discretion by the trial court. The trial court has discretion in phrasing its instructions to the jury, and is not limited to particular language, provided the law is clearly, adequately, and accurately presented to the jury. *Commonwealth v. Prosdocimo*, 525 Pa. 147, 578 A.2d 1273 (1990); *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61 (1983). The charge with regard to mitigating circumstances, when read as a whole, clearly, adequately, and accurately presented to the jury the law concerning the mitigating circumstance of age. The trial court's discretionary statements were neither incorrect nor prejudicial given the balance of the trial court's instructions, which clearly informed the jury that it was their decision to determine if age was a mitigating factor. Thus, this claim is meritless.

Appellant's final claim is that trial counsel and PCRA counsel were ineffective in failing to assert that the prosecutor

engaged in improper prosecutorial misconduct during the penalty phase.

First, Appellant complains that the prosecutor improperly told the jurors that they should show Appellant the same mercy and sympathy he showed the victims. This argument has no merit.

In *Commonwealth v. Basemore,* 525 Pa. 512, 530, 582 A.2d 861, 870 (1990), cert. denied, 502 U.S. 1102, 112 S.Ct. 1191, 117 L.Ed.2d 432 (1992), this Court specifically held that it is permissible during the penalty phase for a prosecutor to ask the jury to show the defendant the same mercy he showed the victim. See also *Commonwealth v. Jones,* 546 Pa. 161, 683 A.2d 1181 (1996).

Appellant also complains that the prosecutor improperly misstated to the jury at the penalty hearing that although Appellant claimed remorse for the death of his daughter, Holly Jacobs, he did not claim remorse for Tammy Mock. Appellant asserts that this was prejudicial since the jury found remorse as a mitigating factor as it related to Holly Jacobs and imposed a life sentence, but not as it related to Tammy Mock.

As noted previously, Appellant's mother testified at the penalty hearing that Appellant called her and generally expressed sorrow over the events that had occurred. Appellant also testified as follows:

Q. You've already testified in regards to your recollection about what happened. Again could you explain why you returned to York from Atlantic City?

A. To see my daughter.

Q. And as of that day, which would have been either Friday or Saturday, did you still have strong feelings for your daughter, Holly Jacobs?

A. Yes.

Q. Do you understand what the word remorse means?

A. Yes.

158

Q. Did, in your mind, you have remorse for what happened on February 10 th of 1992?

A. Yes.

Q. In that respect again, and I think we might have mentioned this before, did you take some actions in regards to your own health or well-being?

A. Yes.

Q. And what did you do?

A. I cut my wrists.

N.T. September 18, 1992 at 838–39. Given the complete context of the foregoing exchange, it was not an egregious misstatement for the prosecutor to assert that Appellant only expressed remorse for his daughter. Moreover, in response to this assertion, trial counsel argued in his closing statement that Appellant expressed remorse for both Holly Jacobs and Tammy Mock. *Id.* at 857–58.

It was for the jury to determine whether Appellant was remorseful and the trial court instructed them in this regard. The court stated:

.For example, we talked about remorse, and that would be one of those things that could fit into this catch-all provision, if you find the Defendant has shown remorse.

I believe there certainly has been testimony in regard to that. *The question is whether you accept it and whether you find it to be such to constitute what we think of as remorse.*

*Id.* at 872 (emphasis added). Additionally, following the guilt phase, the trial court generally instructed the jury that arguments of counsel are not evidence and that although each counsel has a right to discuss the evidence in a manner that is most favorable to his position, it is for them, the jury, alone to decide the case based on the evidence as it was presented from the witness stand. *Id.* at 785.

Thus, as the trial court properly instructed the jury on its role as fact finder, we conclude that Appellant's claim of prosecutorial misconduct in this regard has no merit. See *Commonwealth v. Talley*, 456 Pa. 574, 578, 318 A.2d 922, 924

(1974) (any prejudice from prosecutor's closing remarks overcome by trial court instructing jury that they are sole finders of fact).[14]

Because all of Appellant's claims of trial counsel and PCRA counsel's ineffectiveness lack merit, we affirm the order of the Bucks County Common Pleas Court.[15]

Justice NIGRO files a Concurring Opinion in which Chief Justice FLAHERTY joins.

Justice NEWMAN files a Concurring Opinion.

NIGRO, Justice, concurring.

I join in the Majority opinion. With regard to footnote number 8, however, I note that I agree that a standardized *Simmons* instruction should be given in all capital cases for the reasons more fully explained in my concurring opinion in *Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31, 43–44 (1998) (Nigro, J., concurring).

Chief Justice FLAHERTY joins in the Concurring Opinion.

NEWMAN, Justice, concurring.

I join the Majority, and write separately only to address footnote 8 of the Opinion. I reiterate the position I expressed in *Commonwealth v. Chandler*, 554 Pa. 401, 721 A.2d 1040 (1998), regarding the "life means life" issue. As I stated in *Chandler* :

> [I]n cases where *Simmons* would require a "life means life" instruction, I agree with Chief Justice Flaherty that the court should instruct the jury that the defendant's sentence could be commuted. Where future dangerousness is at

14. We note that Appellant has made a general allegation of ineffectiveness regarding PCRA's representation of him at the PCRA hearing. Given our disposition of the foregoing issues, however, we find no merit to such a claim.

15. The prothonotary of the Supreme Court of Pennsylvania is directed to transmit, within ninety days, the full and complete record of the trial, sentencing hearing, imposition of sentence and review by this court to the Governor and to the Secretary of Corrections, pursuant to 42 Pa.C.S. § 9711(i).

160

issue, the impossibility of parole and the possibility of commutation are equally relevant, so the court should inform the jury of both contingencies.

In this case, I agree with the majority that future dangerousness was not at issue. Accordingly, I agree that the trial court properly declined to give a "life means life" instruction.