SCIRICA, Chief Judge,
concurring in part and dissenting in part.
I concur with much of the Court’s opinion, but I respectfully dissent as to Part III.A. In my view, the Pennsylvania Supreme Court’s analysis does not constitute an unreasonable application of clearly established federal law that warrants vacating Jacobs’ conviction and granting him a new trial.
Jacobs claims his trial counsel was constitutionally ineffective for failing to adequately investigate and present evidence supporting a diminished capacity defense. More specifically, he argues that the affidavits of Drs. Kessel and Flemingeach of whom performed psychiatric examinations of Jacobs for his state collateral appeales-tablish that his trial counsel’s efforts to obtain expert testimony were so deficient and prejudicial as to rise to the level of constitutional ineffectiveness.
The District Court found trial counsel not ineffective on the guilt phase.[24] Be *120 cause I believe the District Court properly applied the standards of the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”),[25] I would affirm.
I. Discussion
As the Court notes, the relevant inquiry here is whether the Pennsylvania Supreme Court’s decision involved an “unreasonable application” of clearly established federal law.[26] A state court decision involves an “unreasonable application of federal law” under 28 U.S.C. § 2254(d)(1) where it “correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner’s case.” Williams v. Taylor, 529 U.S. 362, 407-08, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). For a federal court to find a state court’s application of law unreasonable, “the state court’s decision must have been more than incorrect or erroneous.” Wiggins v. Smith, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). Rather, “[t]he state court’s application must have been ‘objectively unreasonable.’ ” Id. at 521, 123 S.Ct. 2527 (citing Williams, 529 U.S. at 409, 120 S.Ct. 1495). As the Supreme Court has stressed, “an unreasonable application is different from an incorrect one.” Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).
*121 The Pennsylvania Supreme Court evaluated petitioner’s claim as follows:
Next, Appellant maintains that trial counsel was ineffective in failing to adequately investigate and present evidence supporting a diminished capacity defense. The PCRA court rejected this assertion as the record clearly revealed that trial counsel pursued such a defense on behalf of Appellant.
Specifically, trial counsel testified at the PCRA hearing regarding his efforts in this regard. He stated that initially when he suggested to Appellant that a psychiatric evaluation should be conducted, Appellant rejected the idea claiming his sanity. Trial counsel stated that he was able to convince Appellant to submit to a psychiatric evaluation and that he arranged for such evaluation to be performed. Following this examination, trial counsel was contacted by the examining psychiatrist and told that, in his opinion, Appellant was sane and knew what he was doing at the time of the alleged crimes. Counsel, therefore, told the psychiatrist not to issue a report and he was not called to testify at trial.
Nevertheless, consistent with Appellant’s trial testimony, trial counsel pursued a diminished capacity defense in regards to the killing of Tammy Mock. Appellant testified at trial that he was not responsible for Holly Jacobs’ death. He stated that when he handed Holly Jacobs to Tammy Mock, who was in the bathtub, Mock drowned Holly. Appellant testified that after this incident occurred, he ‘lost it’ and killed Tammy Mock. Given this admission, trial counsel argued that Appellant was incapable of forming a specific intent to kill given his mental state at the time of the killing.
Based on the results of the psychiatric evaluation, and given Appellant’s trial testimony, it is clear that trial counsel did investigate and pursue a diminished capacity defense on behalf of Appellant to the best of his ability. Accordingly, as trial counsel had a reasonable basis for proceeding as he did, he cannot be deemed ineffective.
Commonwealth v. Jacobs, 727 A.2d at 548-49.
Like the District Court, I believe this analysis does not constitute an unreasonable application of federal law. In my view, the Court has undertaken de novo review, conducting its own independent application of Strickland rather than focusing its review on an analysis of whether the state court’s application of that test was reasonable under controlling and clearly established law. A habeas petitioner, however, “must do more than show that he would have satisfied Strickland’s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habe-as court that, in its independent judgment, the state-court decision applied Strickland incorrectly.” Bell, 535 U.S. at 698-99, 122 S.Ct. 1843 (citing Williams, 529 U.S. at 411, 120 S.Ct. 1495).
The Pennsylvania Supreme Court’s conclusion that trial counsel did not render ineffective assistance was a reasonable application of Strickland. Testimony at the PCRA hearing established that trial counsel ordered a psychiatric evaluation for Jacobs. Despite Jacobs’ initial reluctance, trial counsel arranged an examination with Dr. Robert Davis, who examined petitioner “to determine if he had a major mental illness or other impairment that would render him incompetent to stand trial or that would negate or reduce his criminal responsibility.” Dr. Davis was aware, specifically, of counsel’s intent to present a diminished capacity defense, and he was provided with the police report detailing *122 the allegations underlying the offense. Dr. Davis found no evidence of mental illness and orally informed trial counsel that, in his opinion, Jacobs suffered no psychiatric illness, knew what he was doing at the time of the alleged murders and was sane.
Relying on Dr. Davis’ opinion, trial counsel did not request a written report. As intended, counsel presented a diminished capacity defense at trial.[27] Highlighting Jacobs’ testimony that he “lost it” and killed Tammy Mock because she had drowned his daughter Holly Jacobs, trial counsel argued to the jury that Jacobs’ mental state rendered him incapable of forming a specific intent to kill at the time of Mock’s death.
This record supports the state court’s conclusion. Accordingly, I would find that the Pennsylvania Supreme Court applied Strickland reasonably in concluding that trial counsel’s investigation and presentation of a diminished capacity defense did not constitute ineffective assistance of counsel.
The Court places great weight on the Pennsylvania Supreme Court’s apparent disregard of trial counsel’s failure to provide Dr. Davis with several “highly relevant facts” and other information “necessary ... to conduct a proper evaluation.” This appears to include trial counsel’s failure to provide Dr. Davis with additional background information and his failure to ask petitioner’s mother, during her interview, about her son’s mental health background.
Strickland requires a reviewing court to consider the totality of the circumstances, but I believe the state court’s analysis did just that. Significantly, Dr. Davis did not state that he was incapable of forming a conclusion on the information available to him and the results he obtained through the psychiatric examination. As the District Court noted, the record revealed no request by Dr. Davis for background information beyond that provided by counsel. Nor was there any reason that, after receiving the doctor’s opinion, counsel would have been on notice to track down medical records or to pursue other inquiries that might possibly relate to Jacobs’ mental health.
The right to counsel “does not require that a criminal defense attorney leave no stone unturned and no witness unpur-sued.” Berryman v. Morton, 100 F.3d 1089, 1101 (3d Cir.1996). With the benefit of hindsight, petitioner now argues that trial counsel might have been able to present psychiatric testimony at trial suggesting Jacobs suffered from mild mental retardation, organic brain damage, or cognitive impairments. The test for ineffectiveness, however, “is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is ... whether what counsel did was within the wide range of reasonable professional assistance.” Rompilla, 355 F.3d at 246 (citations omitted).
Like the PCRA Court, the Pennsylvania Supreme Court, and the District Court, I believe trial counsel’s decisions to arrange a pyschiatric examination, rely on the professional opinion of Dr. Davis, and present a diminished capacity defense supported by Jacobs’ testimony, are not constitutionally defective. Furthermore, I believe the Pennsylvania Supreme Court reasonably applied Strickland in reaching this conclusion. For these reasons, I would affirm the District Court’s denial of petitioner’s *123 ineffective assistance claim regarding trial counsel’s failure to investigate and present a diminished capacity defense at the guilt phase.[28]

.Because the District Court dismissed this claim based solely on a review of the state court records — without conducting its own evidentiary hearing — our review is plenary. Marshall v. Hendricks, 307 F.3d 36, 50 (3d Cir.2002) (citing Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.2001)).

. The Pennsylvania Supreme Court addressed this claim on the merits on PCRA appeal. See Commonwealth v. Jacobs, 556 Pa. 138, 727 A.2d 545, 548-49 (1999). Thus, we apply the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA”), P.L. 104-132, 110 Stat. 1214., 28 U.S.C. § 2254(d); see also Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (deferential standards provided by the AEDPA apply only to those claims adjudicated on the merits in state court proceedings). Under the AEDPA, a petitioner is entitled to habeas relief only where the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,” or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(1).

. The applicable federal law in this instance is the well-settled two-prong test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, in order to merit habeas relief based on a claim of ineffective assistance of counsel petitioner must demonstrate that: (1) his attorney's performance was deficient, and (2) he was prejudiced by this deficiency. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To demonstrate deficiency, petitioner must establish that counsel's performance "fell below an objective standard of reasonableness.” Id. at 688, 104 S.Ct. 2052. To overcome the presumption that counsel was effective, petitioner bears the burden of establishing that counsel's performance was unreasonable under "prevailing professional norms.” Id. at 688, 104 S.Ct. 2052. "In evaluating counsel’s performance, we are 'highly deferential' and 'indulge a strong presumption' that, under the circumstances, counsel’s challenged actions ‘might be considered sound ... strategy.' ” Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir.1999) (citing Strickland, 466 U.S. at 689, 104 S.Ct. 2052). To show prejudice, petitioner must demonstrate that "counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.” Strickland, 466 U.S. at 687, 104 S.Ct 2052.
Ultimately, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.” Id. Put differently, "the issue is not what conduct is prudent or appropriate, but only what is constitutionally compelled.' ” Rompilla v. Horn, 355 F.3d 233, 246 (3d Cir.2004) (quoting Burger v. Kemp, 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987)), cert. granted — U.S. —, 125 S.Ct. 27, 159 L.Ed.2d 857 (2004). Indeed, the Sixth Amendment does not require perfection; instead, it "simply ... ensure[s] that criminal defendants receive a fair trial.” Id. (quotations omitted).

. It bears noting that a diminished capacity defense under Pennsylvania law is "extremely limited” in scope. Commonwealth v. Cuevas, 574 Pa. 409, 832 A.2d 388, 393 (2003).

. Until now, no court has addressed the prejudice prong of Strickland, at the guilt phase. The doctors' testimony by affidavit was only presented for the first time in Jacobs’ PCRA appeal before the Pennsylvania Supreme Court. Because the Pennsylvania Supreme Court found trial counsel's performance constitutionally adequate at both the guilt and penalty phases, it did not consider the affidavits under either prejudice prong of Strickland. The District Court also found trial counsel not ineffective on the guilt phase, and thus did not address Strickland's prejudice prong on the first degree murder verdict.
The affidavits of Drs. Kessel and Fleming, therefore-the evidence upon which this Court relies in concluding there exists a reasonable probability that the jury, had it heard testimony from these two doctors, would have found Jacobs guilty of third degree murder rather than first degree murder-have never been factually contested in any court. In my view, vacating the conviction is inappropriate where the issue of prejudice has never been engaged on the verdict of first degree murder. At most, then, this case should be remanded to the District Court to consider prejudice at the guilt phase of the trial.