J-S66006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| THOMAS ANTHONY SCOTT | |
| Appellant | No. 1354 WDA 2014 |

Appeal from the PCRA Order June 26, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003918-2011

BEFORE: OLSON, STABILE and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 14, 2015**

Appellant, Thomas Anthony Scott, appeals *pro se* from the order entered on June 26, 2014, dismissing his petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The trial court previously summarized the evidence presented during Appellant's jury trial. As the trial court explained:

> City of Pittsburgh Police Sergeant Jason Snyder, a narcotics detective, testified that[,] on March 9, 2011, he was on patrol in a high crime area of Pittsburgh while in an unmarked police vehicle with Detective Jedidiah Pollock. Detectives Ed Fallert and Mark Goob were trailing him in a second unmarked vehicle. Sergeant Snyder heard multiple gunshots to his right. He turned and saw a male in dark clothing in an alley firing a handgun. Sergeant Snyder, who testified he was wearing his badge around his neck, exited his vehicle and loudly declared "Pittsburgh Police, drop your weapon." The assailant, identified by the Sergeant as Appellant, immediately turned and fired more than eight rounds at the Sergeant. Sergeant Snyder returned fire and hit Appellant, causing him to fall face forward.

*Retired Senior Judge assigned to the Superior Court.

Detective Mark Goob also testified that he observed Appellant shoot at Sergeant Snyder. He heard the shots and saw the muzzle flash. After Appellant was hit, Detective Goob approached him to determine if Appellant remained a threat and to render medical aid if possible. During his cautious approach, Detective Goob repeatedly instructed Appellant to drop the weapon[,] which the Detective could see in Appellant's hand. Instead, while Detective Goob was approximately five yards away, Appellant turned, pointed his gun at Detective Goob and started to fire again. Detective Goob heard the gun discharge and returned fire, hitting Appellant in the leg. The [Detective] saw the slide of Appellant's gun lock back, an indication that Appellant was out of bullets. Appellant then said words indicating that he quit or was done and dropped the gun.

Detective Edward Fallert testified similarly to having observed Appellant turn and fire at Sergeant Snyder. Once Sergeant Snyder shot Appellant to the ground, Detective Fallert heard Detective Goob repeatedly shout to Appellant to drop the gun. Instead of complying with the [Detective's] demand, Detective Fallert observed Appellant roll with gun in hand toward Detective Goob. After getting shot by Detective Goob, Detective Fallert saw Appellant drop the gun and surrender, the gun in slide-lock, open chamber position. Detective Fallert also noted an odor of alcohol emanating from Appellant.

Detective Jeffrey Palmer recovered the Glock pistol, .40 caliber belonging to Appellant and testified that the gun was recovered with the slide in the locked position.

Detective Scott Evans arrived after the shooting and recovered shell casings at the scene. Eight of the casings were brass in color, which would not have been consistent with police-issued ammunition. Other casings recovered at the scene matched in caliber, make[,] and color with standard issue police "duty ammo." Detective Evans concluded that some casings were fired by police-issued weapons and others were not. Upon further research, [D]etective Evans discovered that the gun found at the

scene was owned by Appellant[,] who did not have a license to carry a firearm on his person.

Trial Court Opinion, 9/12/12, at 3-4 (internal citations omitted).

The Commonwealth charged Appellant with numerous crimes arising out of the above events and, following a trial, the jury found Appellant guilty of two counts each of assault of a law enforcement officer, aggravated assault, and recklessly endangering another person.[1] On August 29, 2011, the trial court sentenced Appellant to serve an aggregate term of 40 to 80 years in prison for the convictions.

We affirmed Appellant's judgment of sentence on June 18, 2013 and, on November 19, 2013, our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Scott*, 82 A.3d 463 (Pa. Super. 2013) (unpublished memorandum) at 1-8, *appeal denied*, 80 A.3d 776 (Pa. 2013).

On April 30, 2014, Appellant filed a timely, *pro se* PCRA petition, wherein Appellant raised the following claims for relief:

My counsel was ineffective in presenting my case [because:]

[1.] [C]ounsel did not present[] know[n] evidence or argument that [Appellant] did not fire at [the] officers[;] medical [records] show that [Appellant] was shot from behind and could not have been facing [the] officers[;]

[2.] Counsel did not argue that the photographs show that [Appellant] fired nine times before [the] officers got out [of

---

[1] 18 Pa.C.S.A. §§ 2702.1(a), 2702(a)(1), and 2705, respectively.

their] cars and could not have fired as many times as said[;]

[3.] Perjured testimony affected the judgment of the jury[;] perjured testimony that [Appellant] turn[ed] around and fired at [the] officer and was shot in the chest violated [Appellant's] due process rights.

Appellant's PCRA Petition, 4/30/14, at 4.

The PCRA court appointed counsel to represent Appellant. However, on June 4, 2014, appointed counsel filed a "no merit" letter and a petition to withdraw as counsel, pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

On June 6, 2014, the PCRA court issued notice that it intended to both grant counsel's petition to withdraw and dismiss Appellant's PCRA petition in 20 days, without holding a hearing. **See** Pa.R.Crim.P. 907(1). On June 26, 2014, the PCRA court finally granted counsel's petition to withdraw and dismissed Appellant's PCRA petition.

Appellant filed a timely, *pro se* notice of appeal on July 23, 2014 and the PCRA court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).[2] Appellant complied and, within his Rule 1925(b) statement, Appellant listed the following claims:

_____

[2] Appellant's notice of appeal was time-stamped and entered on the docket on July 28, 2014. Yet, the envelope that Appellant used to mail the notice of appeal is postmarked July 23, 2014. Thus, in accordance with the prisoner
*(Footnote Continued Next Page)*

- 4 -

1. Trial counsel was ineffective for failing to provide medical records at trial.  Trial Counsel failed to provide medical record[s] to support testimony of [Appellant] and disprove testimony of [C]ommonwealth witnesses.

2. Trial counsel was ineffective for failing to argu[e] the forensic photograph.  Trial counsel failed to argue forensic photograph [which conflicted] with testimony of the [C]ommonwealth witnesses.

3. [Appellant's] due process right was violated by perjured testimony.  Multiple witnesses of the [C]ommonwealth testified falsely violating [Appellant's] due right process.

Appellant's Rule 1925(b) Statement, 9/17/14, at 1.

On appeal, Appellant raises the following claims:

1. Whether [the] PCRA [court] erred when [it] allow[ed] PCRA counsel to withdraw after filing [the] **Turner**/**Finley** "no merit" letter, and dismissing [Appellant's] *pro se* petition without a hearing, depriv[ing Appellant] of a substantial right to amend defective pro se petition[?]

2. PCRA counsel was ineffective by failing to amend *pro se* petition to argue trial counsel's ineffectiveness in failing to employ expert's investigation into the exculpatory and impeachment evidence presented by the Commonwealth, to [bolster] defense trial strategy involving [Appellant's] testimony and credibility.

3. PCRA counsel was ineffective by failing to argue trial counsel's ineffectiveness in neglecting to suppress [Appellant's] statement.

---

*(Footnote Continued)* ————————————————

mailbox rule, "Appellant's *pro se* [notice of appeal] is deemed to be filed when it was handed to prison officials" for mailing – which was, at the latest, July 23, 2014.  **Commonwealth v. Ousley**, 21 A.3d 1238, 1241 n.2 (Pa. Super. 2011).

      4. PCRA counsel was ineffective by failing to argue [Appellate] counsel's ineffectiveness in neglecting to preserve and raise for appellate review the issue that the sentence was manifestly excessive and unreasonable.

Appellant's Brief at 5, 16, 34, and 40.

All of Appellant's claims on appeal are waived, as Appellant did not include the claims in his PCRA petition or in his court-ordered Rule 1925(b) statement. *Commonwealth v. McGill*, 832 A.2d 1014, 1021-1022 (Pa. 2003) (a claim that PCRA counsel was ineffective is separate and distinct from a claim that trial counsel was ineffective); *Commonwealth v. Rigg*, 84 A.3d 1080, 1085 (Pa. Super. 2014) ("where the new issue is one concerning PCRA counsel's representation, a petitioner can preserve the issue by including that claim in his Rule 907 response or raising the issue while the PCRA court retains jurisdiction. Since [a]ppellant did not seek leave to amend his petition or otherwise preserve his . . . PCRA counsel ineffectiveness claims, he waived the issues he raised for the first time in his [Rule] 1925(b) statement[]") (internal citations omitted); *Commonwealth v. Jacobs*, 727 A.2d 545, 547 (Pa. 1999) ("issues [that] were not raised in [an] original PCRA petition, counsel's amended petition, or the oral amendments made to [a] petition before the PCRA court . . . are waived"); Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the [Rule 1925(b) s]tatement . . . are waived"); *Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005) ("[a]ny issues not raised in a Pa.R.A.P. 1925(b) statement will be waived").

      Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2015