J-S46019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERNIE RIVERA-GONZALEZ | |
| Appellant | No. 2020 MDA 2016 |

Appeal from the PCRA Order November 17, 2016
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0005899-2014

BEFORE:  BOWES, OLSON, JJ. and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 18, 2017**

Appellant, Ernie Rivera-Gonzalez, appeals *pro se* from the order entered on November 17, 2016, dismissing Appellant's petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court has ably summarized the underlying facts and procedural posture of this appeal.  As the PCRA court explained:

> On October 5, 2014, police were called in response to a reported stabbing.  When officers arrived at the scene, they found the victim, Alexander Vazquez-Dones, lying on the sidewalk, bleeding from a stab-wound to the chest.  Mr. Vazquez-Dones was transported by ambulance to the hospital where emergency efforts were made to save his life.  Unfortunately, the efforts were unsuccessful, and Mr. Vazquez-Dones died. . . .
>
> While securing the scene, a police officer found a black, leather wallet [lying] on the sidewalk across the street from where Mr. Vazquez-Dones was found.  Within the wallet, the

* Former Justice specially assigned to the Superior Court.

officer discovered [Appellant's] state identification card. The officer showed the ID card to two eye-witnesses, both of whom confirmed [that] the person in the ID card photo was who they saw stab Mr. Vazquez-Dones once in the chest with a [pocketknife] before fleeing the scene on foot. The witnesses were also familiar with [Appellant], as he had frequented the neighborhood. One of the witnesses, Mr. Vazquez-Dones' brother, had known [Appellant] for about [ten] years, and stated that [Appellant] had told him prior to the stabbing that he was planning to fight Mr. Vazquez-Dones. [Appellant] was ultimately caught [11] days later, on October 16, 2014, by a police officer responding to a disturbance call in Enfield, Connecticut.

[Appellant] was charged with criminal homicide[] and extradited back to Pennsylvania. Once here, he was appointed counsel, who filed an omnibus pre-trial motion on his behalf. Ultimately, a suppression hearing was scheduled for November 30, 2015, with a trial, if necessary, to begin on December 7, 2015. . . .

While the . . . suppression [motion] was pending, [Appellant's counsel] was able to get the Commonwealth to offer a reduction of the charge from first to third degree murder[,] with an agreed upon sentence of 15-30 years' incarceration. [Appellant's] counsel then requested a status conference due to [Appellant's] desire to reject that negotiated plea offer and proceed to trial. [The trial court] granted that request, and a status conference was held on November 5, 2015. At that conference, [the trial court] was informed that while the Commonwealth had made such an offer, [Appellant] still had some concerns and misgivings about the negotiation process and was still considering proceeding *pro se*. Accordingly, to give time for [Appellant's] concerns to be resolved, and to address any continuing issues on the record, [the trial court] scheduled another conference for November 19, 2015.

Prior to the November 19th conference, [Appellant's] counsel contacted [the trial court's] chambers to request scheduling a guilty plea hearing for the following Monday. Due to [Appellant's] prior assertions, however, [the trial court] still held the scheduled status conference. At the conference, [Appellant's] counsel explained to [the trial court] that while

- 2 -

[Appellant] had indicated the day before that he was ready to accept the Commonwealth's offer, at the time of the conference, she was no longer sure how he wished to proceed. After informing [Appellant] of the importance of not revealing attorney-client confidences, [the trial court] then proceeded to question him to ensure he understood the proceedings, to avoid any further delay, and to determine whether he wished to proceed *pro se*.

[Appellant] then stated that he did not want to sign the plea agreement because, while he did not consider [his counsel] incompetent, he did not trust her. [The trial court] then confirmed with [Appellant] and the Commonwealth that the offer was only open until the end of the week. [The Commonwealth] then added that the offer was only available to begin with because [Appellant's counsel] had advocated very strongly on [Appellant's] behalf. The [Commonwealth] also noted that their theory of the case was first degree murder, and that is what they would pursue should the case proceed to trial.

After confirming with [Appellant] that he understood the situation, [the trial court] asked [Appellant's counsel] if she would like to add anything. She then explained that she had believed [Appellant] was truly ready to accept the plea that afternoon, but that [Appellant] changed his mind only after hearing the plea [hearing] had been rescheduled. [Appellant's counsel] then requested that the Commonwealth keep their plea offer open, because she did not want [Appellant's] decision to be a "knee-jerk reaction" because of her, and so that [Appellant] could confer with his family or people he did trust before making a final decision. [Appellant] then stated that he thought the agreement was unfair, that it should have been for 14-28 years instead of 15-30, that he was rejecting the Commonwealth's offer, and that he wanted to proceed *pro se*. In response, [the trial court] reminded [Appellant] that the right to counsel is an important Constitutional right, and that [the trial court] would need to ask him a series of questions before allowing him to proceed *pro se*, to ensure that his decision to waive that important right was knowing, voluntary, and intelligent. Even though [Appellant] had never previously had any difficulty understanding English, at this point he stated that he required an interpreter. None being immediately

available, [the trial court] terminated the proceeding until the following Monday, November 23, 2015.

Prior to the November 23, 2015 hearing, an interpreter was provided to [Appellant] to assist him with any language issues or questions he had with the written waiver of counsel colloquy. [Appellant's counsel] then informed [the trial court] that [Appellant] no longer wished to proceed *pro se*, and instead wanted to accept a revised plea offered by the Commonwealth. The interpreter thereafter assisted [Appellant] with any language issues or questions he had with the written guilty plea colloquy.

As a result of this change of heart, [the trial court] proceeded with a guilty plea hearing. At the outset, [the trial court] confirmed with [Appellant] that he had the interpreter he had demanded, and that the interpreter's services were adequate. [The trial court] then had him confirm his decision that instead of going to trial, he intended to plead guilty to third degree murder. When asked about mental health and medications, [Appellant] responded that he had previously been treated for bipolar disorder and depression, and that he was currently on medication for anxiety, high blood pressure, and seizure[s]. [Appellant] confirmed, however, that there was nothing about those conditions or medications that in any way "would impair or limit [his] ability to understand" what was happening at the proceeding. Indeed, [the trial court's] own observations throughout the colloquy left [the trial court] with no doubt that [Appellant] fully understood the meaning and gravity of his statements and decision.

[Appellant] also acknowledged that he had reviewed the written guilty plea colloquy with his attorney and with the assistance of the interpreter. [Appellant] stated that he was able to understand all of the questions in the document, and that, while he had had some questions, those questions were answered satisfactorily by his attorney before he signed the agreement[; Appellant confirmed that he] fully underst[ood] the documents' meaning and legal effect. Likewise, [Appellant] signed a separate[] guilty plea slip before the proceeding, and confirmed that the signature on the slip was his own.

[The trial court] then verbally explained the charge of third degree murder during the colloquy, defining it as "a killing with malice," and explaining that malice occurs if the "perpetrator's actions show his or her wanton and willful disregard of an unjustified and extremely high risk that his or her conduct would result in death or serious bodily injury to another." After reading this definition to [Appellant], he indicated that malice had previously been "explained different[ly]" to him. After [Appellant] briefly conferred with counsel, [the trial court] asked again if [Appellant] understood the charge, and specifically malice, and [Appellant] replied that he did. Then, to further ensure there could be no doubt as to [Appellant's] understanding of the plea, [the trial court] defined malice a second time. At [Appellant's] request, [the trial court] then had the interpreter define malice for him in Spanish, followed by another explanation of third degree murder in English, including another reading of the definition of malice. After conversing again with counsel, [Appellant] responded again that he admitted to the charge. Following this admission, [the trial court] explained to [Appellant] that he faced a maximum sentence of [40] years in prison and a fine of $50,000[.00].

Before going further, [the trial court] made sure that [Appellant] admitted that he killed Alex Vasquez-Dones by stabbing him in the chest with a pocketknife during an argument. [Appellant] also admitted that before the incident occurred, he had told the victim's brother he was planning to fight the victim. [Appellant] likewise admitted that after stabbing the victim, [Appellant] fled from Lancaster County to Connecticut, but was later identified as the perpetrator by two eye-witnesses, and by his wallet, which he left at the scene. [The trial court] then made sure that [Appellant] knew he had an absolute right to have a trial by jury where it would be the Commonwealth's burden to prove [Appellant] guilty beyond a reasonable doubt. [Appellant] also recognized that he was giving up most of his rights to appeal, that he was pleading guilty of his own free will, and that no one forced or threatened him to induce the plea. While [Appellant] claimed that he was not satisfied with counsel's services, he stated that there was nothing he would like to know that he [had not] been told

up to that point, and that he had no questions he wanted to ask his lawyer before entering the plea.

When given his right to make a statement, after asking permission to address the victim's family, [Appellant] stated the following: "Forgive me. I know it's difficult because you lost a son, and you have the person in front of you, the person who did it."

Assured that the plea was knowing, voluntary, and intelligent, [the trial court] accepted the plea agreement, sentencing [Appellant] to the agreed upon guideline sentence of 14 to 35 years [in prison] plus costs.

[Appellant] filed no direct appeal in this case, and almost one year after sentencing, [Appellant] filed [a] *pro se* PCRA petition.[1, 2] [Appellant] was appointed counsel, who, after reviewing the case, filed a [no-merit letter and a request to withdraw as counsel, pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v.**

_____

[1] Appellant raised the following claims in his *pro se* PCRA petition:

[1.] Was [Appellant] denied due process where his pre-sentence self-defense claims were negated by [an] incomplete colloquy on criminal homicide which should have included an instruction on voluntary and involuntary manslaughter from which [Appellant] could have faced a lesser degree of homicide as opposed to the only alternative plea of third degree murder?

[2.] Was counsel ineffective for not requesting a competency hearing where [Appellant] clearly informed the court of multiple occasions that he was bipolar, depressed, arguably [schizophrenic], and on daily medications which reasonably could have [affected] and clouded his judgment?

Appellant's *Pro Se* PCRA Petition, 8/1/16, at 5 (some internal capitalization omitted).

[2] Appellant timely filed his PCRA petition on August 1, 2016.

> *Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*)]. After reviewing the [*Turner*/*Finley* letter], and an objection filed by [Appellant], [the PCRA court entered an order notifying Appellant that it intended to dismiss Appellant's PCRA petition in 20 days, without holding a hearing. **See** Pa.R.Crim.P. 907(1). Appellant] then filed a motion for extension of time, asking to amend his petition[] and "adequately respond" to the [Rule] 907 [notice; the PCRA court granted this request]. Shortly after issuing that order, [the PCRA court] received [Appellant's] response to [the Rule 907 notice.[3]] After reviewing it, [the PCRA court] still found his petition to be meritless, dismissed it accordingly, and granted counsel leave to withdraw. . . .

PCRA Court Opinion, 2/6/17, at 1-9 (internal citations, footnotes, and some capitalization omitted).

Now on appeal, Appellant raises four claims to this Court:[4]

_____

[3] Appellant's response claimed that PCRA counsel's no-merit letter was insufficient because his claims had merit and because "PCRA counsel's failure to communicate with [Appellant] and his failure to explain any extra-record investigation[] denied the very right entitled by our [C]onstitution." Appellant's Response, 10/14/16, at 9.

[4] On December 15, 2016, the PCRA court entered an order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), instructing Appellant to file and serve a concise statement of errors complained of on appeal within 21 days. PCRA Court Order, 12/15/16, at 1. As the PCRA court notes, Appellant's Rule 1925(b) statement arrived in an envelope stamped "1/05/17." **See** PCRA Court Opinion, 2/6/17, at 9; Envelope, postmarked 1/5/17, at 1. We note that, since Appellant is incarcerated and proceeding *pro se*, Appellant's Rule 1925(b) statement is timely. **Commonwealth v. Patterson**, 931 A.2d 710, 714 (Pa. Super. 2007) ("[p]ursuant to the prisoner mailbox rule, we deem a document filed on the day it is placed in the hands of prison authorities for mailing").

Within Appellant's Rule 1925(b) statement, Appellant listed the following claims:

> [1.] Appellant is [innocent] of third degree murder.

*(Footnote Continued Next Page)*

[1.] Was counsel ineffective during the procession of plea negotiations for compelling Appellant to accept the terms without having advised Appellant of the facts of the case against him as they related to the offense?

[2.] Was counsel ineffective for failing to inform Appellant of the lesser elements of criminal homicide and include those applicable to plea negotiations in light of Appellant's claims of self-defense?

*(Footnote Continued)* _____

[2.] PCRA court [erred] in denying [Appellant's] self-defense claim that denied him due process where his pre-sentence self-defense claims were negated by an [incomplete] colloquy on criminal homicide which should have include[d] an instruction on voluntary and involuntary manslaughter from which petitioner could have faced a lesser degree of homicide as opposed to the only alternative plea of third degree murder.

[3.] PCRA court [erred] in denying [Appellant's] ineffective [assistance of] counsel claim for not requesting a competency hearing where Appellant clearly informed his counsel of mental health problems since [juvenile] in and out of mental health hospital[s], mental wards, also Appellant informed the courts of multiple occasions that he was bipolar, depressed, arguably schizophrenic, and PTSD, and on daily medications which reasonably could have [affected] and clouded his [judgment].

[4.] PCRA court [erred] in not addressing [Appellant's] claim of counsel ineffectiveness during the plea [bargaining] process making [Appellant's] plea unknowingly, unintelligently and [involuntarily] accepted.

[5.] PCRA court [erred] in not addressing and/or finding that PCRA counsel was ineffective for filing a no merit [letter] without ever contacting Appellant.

Appellant's Rule 1925(b) Statement, 1/5/17, at 1.

[3.] Was counsel ineffective for failing to request a competency hearing after Appellant informed the court on multiple occasions that he was bipolar, suffered from chronic depression, that he was arguably schizophrenic, and that he was diagnosed with post-traumatic stress disorder?

[4.] Was PCRA counsel ineffective for filing a [no-merit] letter without having contacted Appellant?

Appellant's Brief at vii.[5]

As we have stated:

[t]his Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by evidence of record and is free of legal error. In evaluating a PCRA court's decision, our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. We may affirm a PCRA court's decision on any grounds if it is supported by the record.

*Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010) (internal citations omitted).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffectiveness of counsel which, in the circumstances of the particular case, so undermined the truth-determining

---

[5] For ease of discussion, we have reorganized Appellant's claims on appeal.

process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is, however, presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

*Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Id.*

First, Appellant claims that plea counsel was ineffective "during the procession of plea negotiations for compelling Appellant to accept the terms without having advised Appellant of the facts of the case against him as they related to the offense." Appellant's Brief at 9. Appellant did not raise this claim in his PCRA petition or in his Rule 1925(b) statement.[6] Therefore, the

---

[6] The PCRA court finally dismissed Appellant's PCRA petition on November 17, 2016. PCRA Court Order, 11/17/16, at 1. We note that, on November 30, 2016, Appellant filed a purported "Amended PCRA Petition," where Appellant attempted to raise a number of additional claims. *See* Appellant's Amended PCRA Petition, 11/30/16, at 1-12. Yet, given that the PCRA court
*(Footnote Continued Next Page)*

claim is waived. ***Commonwealth v. Jacobs***, 727 A.2d 545, 547 (Pa. 1999) ("issues [that] were not raised in [an] original PCRA petition, counsel's amended petition, or the oral amendments made to [a] petition before the PCRA court . . . are waived"); Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the [Rule 1925(b) s]tatement . . . are waived"); ***Commonwealth v. Castillo***, 888 A.2d 775, 780 (Pa. 2005) ("[a]ny issues not raised in a Pa.R.A.P. 1925(b) statement will be waived").

Second, Appellant claims that plea counsel was ineffective because she "fail[ed] to inform Appellant of the lesser elements of criminal homicide and include those applicable to plea negotiations in light of Appellant's claims of self-defense." Appellant's Brief at 1. Appellant did not raise this specific claim either in his PCRA petition or in his Rule 1925(b) statement. Rather, Appellant's PCRA Petition and Rule 1925(b) statement only claimed that Appellant was denied due process of the law because "his pre-sentence self-defense claims were negated by an [incomplete] colloquy on criminal homicide which should have include[d] an instruction on voluntary and involuntary manslaughter." Appellant's Rule 1925(b) Statement, 1/5/17, at

*(Footnote Continued)* ─────────────

had already dismissed Appellant's PCRA petition, Appellant could not "amend" the current petition. Moreover, Appellant cannot file a second PCRA petition until "the resolution of review of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review." ***Commonwealth v. Lark***, 746 A.2d 585, 588 (Pa. 2000).

- 11 -

1. Appellant's claim that the trial court conducted an "incomplete colloquy on criminal homicide" does not include any claim that plea counsel was ineffective for failing to negotiate for, or inform Appellant of, a lesser charge. Therefore, Appellant has waived his current claim on appeal. *Jacobs*, 727 A.2d at 547; Pa.R.A.P. 1925(b)(4)(vii).

Third, Appellant contends that plea counsel was ineffective for failing to request a competency hearing. Appellant's Brief at 6. This claim fails.

"A criminal defendant has the right to effective counsel during a plea process as well as during trial." *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002). Yet, where the ineffectiveness of counsel is claimed in connection with the entry of a guilty plea, a petitioner may only obtain relief where "counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating [the] entry of an unknowing, involuntary, or unintelligent plea." *Commonwealth v. Moser*, 921 A.2d 526, 530 n.3 (Pa. Super. 2007) (*en banc*) (internal citations and quotations omitted). As we have explained:

> once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established.

*Commonwealth v. Stork*, 737 A.2d 789, 791 (Pa. Super. 1999) (internal quotations, citations, and corrections omitted), *quoting Commonwealth v.*

*Myers*, 642 A.2d 1103, 1105 (Pa. Super. 1994). "To prove prejudice, [an] appellant must prove he would not have [pleaded] guilty and would have achieved a better outcome at trial." *Commonwealth v. Fears*, 86 A.3d 795 (Pa. 2014) (internal quotations and citations omitted).

Moreover,

> With regard to the voluntariness of a plea, a guilty plea colloquy must "affirmatively demonstrate the defendant understood what the plea connoted and its consequences." *Commonwealth v. Lewis*, 708 A.2d 497, 501 (Pa. Super. 1998). Once the defendant has entered a guilty plea, "it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him." *Commonwealth v. Bedell*, 954 A.2d 1209, 1212 (Pa. Super. 2008). Competence to plead guilty requires a finding that the defendant comprehends the crime for which he stands accused, is able to cooperate with his counsel in forming a rational defense, and has a rational and factual understanding of the proceedings against him. *Commonwealth v. Turetsky*, 925 A.2d 876 (Pa. Super. 2007).

*Commonwealth v. Willis*, 68 A.3d 997, 1002 (Pa. Super. 2013). "A defendant is bound by the statements which he makes during his plea colloquy." *Commonwealth v. Lewis*, 708 A.2d 497, 502 (Pa. Super. 1998) (internal citation omitted). "A defendant may not assert grounds for withdrawing the plea that contradict statements made when he pled guilty." *Id.*

Within Appellant's PCRA petition and brief to this Court, Appellant notes that, during the plea colloquy, Appellant "repeatedly indicated" that he could not understand the element of "malice" in the third-degree murder

charge. *See* Appellant's Brief at 6. However, as both Appellant and the PCRA court note, after Appellant indicated that he could not understand the charge during the plea colloquy, the PCRA court took its time and repeatedly explained to Appellant the elements of third-degree murder and, specifically, the element of malice. *Id.* As the PCRA court declared:

> [The trial court] verbally explained the charge of third degree murder during the colloquy, defining it as "a killing with malice," and explaining that malice occurs if the "perpetrator's actions show his or her wanton and willful disregard of an unjustified and extremely high risk that his or her conduct would result in death or serious bodily injury to another." After reading this definition to [Appellant], he indicated that malice had previously been "explained different[ly]" to him. After [Appellant] briefly conferred with counsel, [the trial court] asked again if [Appellant] understood the charge, and specifically malice, and [Appellant] replied that he did. Then, to further ensure there could be no doubt as to [Appellant's] understanding of the plea, [the trial court] defined malice a second time. At [Appellant's] request, [the trial court] then had the interpreter define malice for him in Spanish, followed by another explanation of third degree murder in English, including another reading of the definition of malice. After conversing again with counsel, [Appellant] responded again that he admitted to the charge.

PCRA Court Opinion, 2/6/17, at 6-7 (internal citations omitted).

Neither in Appellant's PCRA petition nor in his brief to this Court does Appellant ever claim that he failed to understand the element of malice **after** the PCRA court fully explained the element to him. *See* Appellant's Brief at 6-8. Moreover, Appellant has never claimed that any of his alleged illnesses or possible medications actually prevented him from understanding the element of malice. *Id.* Therefore, "even if counsel had no reasonable

basis to decline to pursue a competency evaluation, Appellant fails to articulate how he was prejudiced because he cannot establish that had counsel requested an evaluation and hearing, the outcome of" the proceedings would have changed. ***Commonwealth v. Rainey***, 928 A.2d 215, 236-237 (Pa. 2007). Appellant's claim on appeal fails.

Finally, Appellant claims that PCRA counsel was ineffective "for filing a [no-]merit letter without having contacted Appellant." Appellant's Brief at 11. Even if Appellant raised this claim in his response to the Rule 907 notice, the claim fails because Appellant has completely "fail[ed] to articulate how he was prejudiced" by PCRA counsel's actions. ***See Rainey***, 928 A.2d at 236. Thus, Appellant's final claim on appeal fails.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/2017

- 15 -